Curia, per Savage, Ch, J.
From the whole case the facts appear to be as follows: The plaintiff Austin, and one Orrin Wilcox, were in possession of farms in Orleans county, and each had sowed a crop of wheat on the farm by him occupied. After sowing, and in October, 1825, they agreed to exchange farms, each reserving his own crop of wheat. On the 13th of October, 1825, they executed quit-claim deeds containing no reservations' whatever. Austin fenced the wheat, on the farm he had left, in the spring of 1826. Wilcox did the same as to the wheat he had sowed, and at harvest time he cut and carried it away. Wilcox did not take possession of the farm which he had of the plain- *43 some time after contracted to assign his interest in to the defendant. Wilcox then stated to the defendant, that the wheat was reserved, and belonged to Austin the plaintiff. Some time elapsed after this parol agreement, before the assignment was in fact executed. The conveyance to Wilcox was without seal, and so wa* the assignment, which was as follows : “ In consideration of one hundred and seventy dollars, I assign over all nay right, title and interest to within contract; Orrin Wilcox.” Wilcox wished to reserve some trees as well as the wheat; but the defendant objected to this, as he did not wish to have them cut. It does not appear from the case when the assignment was executed ; but the agreement by parol was three or four weeks before, when the wheat was reserved. The same thing was repeated when the writing was signed. The defendant’s son testified that he thought he heard his father say that the wheat was reserved, and that it was Austin’s. The defendant cut the wheat and put it in his own barn. There were 104 bushels.
*The parol evidence of the contract between Austin and Wilcox, and of the reservation of the wheat, and also between Wilcox and the defendant, was objected to, and received subject to all legal exceptions.
From, the whole case, if properly before us, the justice of it is strongly with the plaintiff. But the plaintiff’s right of recovery depends on the validity of his reservation of the wheat. The defendant shows an absolute conveyance, which is a complete answer to the action unless it can be obviated.
1. As to the evidence of the reservation. The contract was first made by parol, reserving the wheat; and when the quit-claim was executed, the same parol agreement reserving the wheat was again repeated. But there is no direct evidence of a contract respecting the wheat, subsequent to that conveyance.
“There is no rule of evidence better settled,” says Chancellor Kent, (1 John. Ch. Rep. 429,) “than that which declares that parol evidence is inadmissible to contradict or substantially vary the legal import of a written agreement. *44 S'u'ch evidence is hot only Contrary to the statute oí" fraüus; but to the maxims bf the' coihmon law.”
The written instrument must be Considered as Containing thb true agreement betwéeñ the parties; ahd ás furbishing better evidence than ány which Can be Supplied by parol-. (1 Ph. Ev. 495. 5 Cowen, 508.) The testimony in this ease respecting the reservation between Austin and Wilcox, relates to conversations antecedent to; and at the tinto of executing the9 quit-claim conveyance. That must of Course be rejected, and expunged from the cásC-,
All that remains relates to "similar CdhVérsatiohs between Wilcox and the defendant, and the acts of-the defendants, Before WilcoX assigned to the defendant; he fréqtiehtly admitted that the Wheat belonged to the plaintiff. Had he Sold it by parol to the plaintiff, and afterwards cbnvéyiá’d it to the defendant; would not the- plaintiff be entitled to it ori the ground that grain growing may be sold by parol, and that having been sold by a valid contract; Wilcox’s assignment to the defendant, *beihg Subsequent tó the Sale to, the plaintiff, Could convey to the defendant no greater right than Wilcox had ?
In Whipple v. Foot, (2 John. 422,) it wáS decided By this court that wheat growing i's á Chattel; atid máy be sbld as such on execution, [1] The same doctriné was held by this cóürt in Stewart v. Doughty; (9 John. 112,) where it is added that the purchaser became entitled to the right of ingress; &c. to gather the drop. On this question the English CaSéS Seem to me not quite consistent-. In Poulter v. Killingbeck, (1 B. & P. 398,) Buller, justice, in spéákiíig Of a párol transfer of half the growing crops, says, with respect to the point made at the trial on. the statute of frauds; this agreement dees not relate to any interest in the land; which remains altogether unaltered by the arrangesment concerning the crops-. In Crosby v. Wadsworth, (6 East, 611,) Lord Ellenborough, speaking of a parol Contract *45 for the sale of a crop of growing grass, says, “I think that the agreement stated, conferring as it professes to do an exclusive right to the vesture of the land, during a limited time, and for given purposes, is a contract or sale of an interest in, or at least an interest concerning lands.” But subsequently, in Parker v. Staniland, (11 East, 363,) the same learned judge held that a parol contract for a. crop of potatoes in the ground was valid; and the distinction he took was, that the one was growing, and the other had come to maturity; and also, that the one was not delivered, being not yet in a fit state for delivery; but the other was, by the agreement itself, delivered as far as they- were capable of delivery. [1]
The distinction taken by the supreme court of errors in Connecticut, (3 Bay, 484,) is thiswhen there, is a sale: of property which would pass by a deed of land as such, without any other description, if it can be separated, from the freehold, and by the contract is to be separated, such contract is pot within the statute.
Whatever may be the rule of construction elsewhere, we are not at liberty here to question the validity of a paroj contract for the sale of growing crops. Was there any evidence of such a contract!
*Rejecting all that passed anterior to, and at the time of executing the written contract, the proof is that Wilcox, when treating with the, defendant as to the sale of the farm, «lecláred the, wheat to. belong to the plaintiff. This is, sufficient in my judgment to authorize a jury to presume a formal and valid contract for the sale of the wheat.
The title to, the wheat then being in the plaintiff, it was not in the power of Wilcox to convey it to the defendant. Suppose Wilcox had leased this wheat-field for three years by parol, the lease would have been valid. Any absolute conveyance to him, subsequently, could not divest the rights of the lessee by parol. For the same reason, the assignment by Wilcox to the defendant, though absolute in its terms, conveyed no more than Wilcox had a right to con *46 ve/. The crop of wheat, therefore, I consider legally shown to be the property ot the plaintiff. 2. Could he, then, maintain his action ? In answer to this question, I say in the language of Lord EllenboroUgh, (6 East, 610,) “ As the plaintiff appears to have been enti-
tled to the exclusive enjoyment of the crop growing on the land, during the proper period of its full growth, and until it was cut and carried away, he might in respect of such exclusive right, maintain trespass against any person doing the acts complained of.” He cites Co. Lit. 4, b., and 3 Bur. 1824; in the first of which it is laid down, that whoever hath the vesture of the land, as the crops, shall have an action of trespass quare clausum fregit. In the latter (the case of Wilson v. Mackreth,) it was objected that trespass would not lie. Lord Mansfield said there wants nothing to answer the objection but to state the case, Which he summed up thus : “ The plaintiff’s right is in a several piece of ground, butted and bounded; a separate right of property to take the profit of the turf, and to dig it for that purpose. The plaintiff has this right exclusive of all others, and the defendant has disturbed him in it; therefore, trespass lies though he has not the absolute right to the soil.” Mr. Justice Yates said, whenever there is an exclusive right, trespass lies. • -
Tn this Case there was an exclusive right, necessarily, to the close, until the harvesting of the wheat. And in Stewart v. Doughty, (9 John. 113.) Kent, Ch. Justice, says, “ The general language of the authorities is to this effect: that the grantee vesturee terree or herbagii terree, may maintain trespass, though he has not the soil.”
I am therefore of the opiniop that the plaintiff is entitled to judgment.
Judgment for the plaintiff

 Green it. Armstroiig, 1 Denio, 550. Mumford v. Whitney, 15 Wen. 387. Carrington v. Root, 2 Mees. & Wels. 248; Stainsburg v. Matthews, 4 id. 343, Jones v. Flint, 10 Adol and E. 739. Worwick v. Bruce, 2 Maulo & S. 205. Graves v. Weld, 5 Barn. & A. 105. Walker v. Sherman, 20 Wen. 638.

 Green v. Armstrong, 1 Denio, 550.