ANN J. THOMAS, PLAINTIFF, *v.* ROSINA WILLIAMS, DEFENDANT.

*Tenants in common of a crop — what acts of the party in possession do not amount to a conversion — when an action for a breach of contract, and not one of replevin, should be brought.*

The plaintiff leased a farm to the defendant for the term of three years, to be worked on shares.. The lease provided that the crop then growing and "all crops, and all other products of said farm during said term, shall be equally divided on the farm;" that the harvesting was to be done by the defendant, each party to pay one-half of the thresher's bills, and that the defendant was to draw the plaintiff's share to market for her at such times as she should reasonably require. A crop of barley, oats and wheat, raised upon the farm, was placed by the defendant in the barn, which was under his control, but to which, however, the plaintiff had daily access, and it was there threshed. The plaintiff, and persons acting in her behalf, went to the barn and there demanded of the defendant that he have the grain cleaved, and one-half thereof given to the plaintiff according to the terms of the lease. This the defendant refused to do.

In this action, brought by the plaintiff to replevy her share of the crop:

*Held*, that no conversion of the plaintiff's property by the defendant was shown, but, at the most, only a breach of the agreement contained in the lease.

*Query*, as to whether the lease imposed upon the defendant the duty of cleaning and dividing the crop.

Upon the trial the plaintiff was permitted, against the defendant's objection and exception, to prove that some time before the crops were harvested, the defendant had mortgaged her (the defendant's) undivided share of the crops.

*Held*, error; that the defendant had the right to sell or dispose of her own share in the crops, so long as she did not interfere with the plaintiff's rights.

MOTION by defendant for new trial, on exceptions taken at the Ontario Circuit and ordered to be heard at the General Term in the first instance.

*H. M. Field*, for the plaintiff.

*E. W. Gardner*, for the defendant.

SMITH, P. J.: ·

Replevin tor a quantity of wheat, barley and oats raised by defendant on plaintiff's farm, on share:.

In February, 1880, the plaintiff leased ֻer farm to the defendant for the term of three years, to be worked on shares. At the time of the lease there was a crop of wheat growing on twenty-seven acres of the farm, and the lease provided that the said crop was to be harvested by the defendant and "the same equally divided." The lease also provided that "all crops and all other products of said farm during said term shall be equally divided on the farm." The defendant and her husband lived on the farm, and the plaintiff occupied a part of the house which she reserved in the lease. The first season the defendant raised barley and oats on the farm, and those crops together with the wheat were harvested, put into the barn on the premises and threshed. The defendant had the control and management of the barn, and was in possession of the grain after it was threshed. The plaintiff, however, had access to the barn, and went into the barn daily while the grain was there. The *gravamen* of the action is the alleged conversion by the defendant of the plaintiff's undivided half of the grain referred to. The testimony relied on by the plaintiff to prove a conversion is substantially as follows: The plaintiff testified that shortly after the grain was threshed she asked the defendant to have it cleaned and one-half given to her according to the terms of the lease, and the defendant refused to do it; that the grain lay in the barn till it was replevied in this suit. Orrin S. Bacon, the sheriff who served the replevin papers, testified that at the request of the plaintiff, or her attorney, he asked the defendant to divide the grain and she said she wanted to see her husband first. The husband came in and the witness requested him to have the grain divided without any trouble. They said they would not do it. On his cross-examination the witness testified that Williams said he would not do it until they came to Canandaigua, and he spoke about an injunction that had been served on them. Benjamin F. Mitchell testified that at the plaintiff's request he called on the defendants and asked them to divide the

grain, and Mr. Williams said it could not be divided "until this matter was settled." The injunction referred to was put in evidence by the defendant, and it appeared to have been obtained by the plaintiff in a prior action, the complaint in which sets out, among other things, the provisions of the lease and alleged that the defendant had violated the same in several particulars specified, and among others had refused to execute a chattel mortgage upon her share of the said crops to secure the payment of her indebtedness to the plaintiff as required by said lease, and had mortgaged the same to one Coyle; and the injunction, in terms, restrained the defendant and her husband from selling, disposing of, or otherwise interfering with said crops. The defendant and her husband testified to the effect that their refusal was in consequence of the injunction.

When the plaintiff rested the defendant's counsel requested the court to nonsuit the plaintiff or to direct a verdict for the defendant, on the ground that it appeared that the parties were tenants in common in the grain, and no undue interference by the defendant with the plaintiff's share was shown. The motion was denied and the defendant's counsel excepted.

The court charged the jury that if the defendant was asked to divide and deliver half the grain and refused, that was a conversion, to which the defendant's counsel excepted.

So far as the injunction is concerned, the defendant has no reason to complain that she had not the full benefit of the evidence on that point. The testimony on her part tended to show that she declined to clean and deliver the wheat because she feared she would make herself liable for disobeying the injunction if she did so, and the jury were instructed that if that was true there was no conversion. As the jury found against the defendant, this branch of the case is of no consequence now, except in view of another trial. The only purpose of the injunction, as shown by the complaint in the injunction suit, was to restrain the defendant from disposing of her share of the crops and grain to the prejudice of the plaintiff's alleged equitable lien thereon. It was not intended to prevent the defendant from delivering to the plaintiff her share. Even if the defendant was induced by the language of the injunction and the advice given to her by counsel to suppose that she was forbidden to separate and deliver to the plaintiff her share on demand, the fact that if she had

done so she would have acted at the request and with the consent of the plaintiff, would have relieved her from the charge of having thereby violated the injunction. Still the testimony of the defendant and her husband that their refusal was dictated by fear of the injunction probably required a submission of that question to the jury, but the fact that the jury did not find in accordance with it shows that they gave careful and cautious consideration to the testimony on that point.

But in some other respects we think there was error. The parties were owners in common of the grain. It has been held in this State that owners in common of grain or other personal property, in its nature separable in respect to quantity and quality by weight or measure (as the grain in question here was shown to be), may sever their portions of the common bulk at will; and where one of them, having the entire property in his possession, appropriates the whole to his own use, and refuses on reasonable demand to let the other have his portion of it, he is liable for a conversion. (*Lobdell* v. *Stowell*, 37 How. Pr., 88; *Channon* v. *Lusk*, 2 Lans., 211.) But we fail to see that the evidence brings the present case within this rule. The most that is proved is that the defendant refused to clean and divide the grain when requested to do so. Was she under any obligation to perform the labor of cleaning and dividing the grain? Certainly the lease does not in terms impose it. The lease expressly provides that the harvesting was to be done by the defendant; that each party was to pay one-half of thresher's bills, and that the defendant was to draw the plaintiff's share to market for her at such times as she should reasonably require, but the lease is silent as to which party should clean or divide the grain. In this view of the case either party had the right to separate his share from the bulk and take it away at any time. It does not appear that the plaintiff proposed to exercise that right, or that the defendant denied that she had the right or did anything to interfere with its exercise. The evidence is, that although the defendant was in possession of the barn, the plaintiff had daily access to it, and it does not appear that the grain was locked up, or but that the plaintiff could have separated and taken away her share if she had chosen to do so. But instead of proposing to do that, she required that the defendant should do it for her.

We do not think the defendant's refusal to comply with that demand was equivalent to a conversion.

But let it be assumed for the purpose of the discussion (without deciding the point) that by the proper interpretation of the lease the obligation of the defendant to "harvest" the grain imposed upon her the duty of doing everything necessary to fit it for market, except as otherwise expressly provided; that is to say, that it put upon her the duty of procuring the grain to be threshed, at the joint expense of both parties, and of cleaning and dividing it. Was her refusal to clean and divide the grain *per se* a conversion of the plaintiff's share, or was it anything more than a breach of the defendant's agreement, subjecting her to the payment of such damages as the plaintiff sustained by reason of the breach? The plaintiff was at liberty to clean and divide the grain, looking to the defendant for the expense of so doing. Suppose the defendant had refused to harvest the crop, doing nothing however, to prevent the plaintiff from harvesting it, would her refusal have amounted to a conversion of the plaintiff's share? No case has gone the length of so holding. In *Channon* v. *Lusk* (*supra*) the grain was to be divided in the half bushel; the plaintiff demanded the right to clean and separate his share, and the defendant refused him permission and ordered him from the premises. In *Lobdell* v. *Stowell* (*supra*) the plaintiff went to the defendant's premises for his share of the corn and oats, and defendant said he could not have them; they were locked up. The plaintiff demanded them of the defendant, and he refused to deliver them to the plaintiff, or to allow him to take them. That was held a conversion by the County Court and by the General Term of this court, in the sixth district. It also appeared in that case that each party had used a portion of the grain, and had subsequently agreed how the remainder should be divided between them. The Commission of Appeals held that the apportionment agreed upon operated as a severance of the tenancy in common, and that the defendant having refused, upon demand, to deliver up the plaintiff's part, was liable for a conversion although there had been no actual separation of such part, and the court declined to pass upon the question whether the plaintiff could have maintained his action independently of such agreement. (*Lobdell* v. *Stowell*, 51 N. Y., 70, 75.) The ground on which the Commission

of Appeals placed their judgment probably would have furnished a basis of recovery in this action, if the defendant had refused, on demand, to deliver to the plaintiff her share of the grain, or to allow her to take it, the portion each party was entitled to, having been fixed by the stipulations in the lease, and there being no evidence that either party had taken any part of the grain for her own use. True, the sheriff testified that when he divided the grain for the purpose of replevying the plaintiff's share, he first took out the same number of bushels that he learned had been used by the defendant for seed upon the farm, and divided the balance equally, and took possession of one-half. What he did with the portion first taken out, does not appear, nor is the propriety of that reservation perceived from anything in the testimony, inasmuch as by the terms of the lease each party was to furnish one-half the seed, and consequently what was taken for seed was equally divided between them. But this does not affect the principal question. As the proof is, simply, that the defendant refused to clean and divide the grain, and not that she refused to deliver to the plaintiff her share, or to let her take it, we think there is no evidence of a conversion.

The other cases cited by the plaintiff's counsel are clearly distinguishable from this. *Stall* v. *Wilbur* (77 N. Y., 158), came up on demurrer, and the complaint alleged that the defendant had refused, on demand, to deliver to the plaintiff her share, but had *sold* and converted it to his own use. In *Osborn* v. *Schenck* (83 N. Y., 201), it was held that where the possession and use by one of two tenants in common of personal property, of the property so held, develops into a destruction of the property, or of the interest of the cotenant, or into such a hostile appropriation of it as excludes the possibility of beneficial enjoyment, or if it ends in a sale of the whole property, ignoring the rights of such cotenant, a conversion is established. It was also held that the mere fact of possession and use by one of such tenants in common, even though it prevents the possession and use of the other, furnishes no ground to the latter for an action for conversion. There is nothing in the present case to bring it within the rule first stated. The only other case cited is *Van Doren* v. *Balty* (11 Hun, 239). There the mortgagee of the interest of one tenant in common of a chattel, sold the whole chattel at a public sale by virtue of his mortgage, and it was held that one who pur-

chased the chattel at such sale, with notice of the rights of the other tenant in common, and took possession of it, and asserted an exclusive title to the property, was liable to the latter in an action for a conversion. The distinction between those cases and the one at bar is obvious.

The plaintiff was permitted, against the objection and exception of the defendant, to prove the fact that some time before the crops were harvested, the defendant mortgaged her undivided share of the wheat and barley to Coyle. The testimony was objected to as immaterial and irrelevant, and it is difficult to see what legitimate bearing it had upon the issue. It seems to have been regarded by the learned judge as throwing light upon the question whether there had been a conversion, for in charging the jury upon that subject, he instructed them that if they saw fit they could consider the fact that before the demand the defendant had transferred her share of the grain. But so far as the rights of the parties involved in this suit are concerned, the defendant had the right to sell or dispose of her own share in the crops so long as she did nothing to affect the plaintiff's share. A sale by one tenant in common of his personal property, to amount to a conversion, must be a sale of the whole, or at least of some portion of the share of the cotenant. The question whether by the provisions of the lease, the plaintiff had an equitable lien on the defendant's share is of no importance in this action, in which the plaintiff seeks to recover her own share only, and rests upon her legal title. Nor did the fact that the defendant had mortgaged her own share characterize her subsequent conduct, as it had no tendency to show that she intended to appropriate the plaintiff's share to her own use. The testimony was irrelevant, and as it may have affected the verdict, its reception was error.

The motion for a new trial should be granted, with costs to abide event.

HARDIN and BARKER, JJ., concurred.

So ordered.