In re BALLANTINE.

CHASE v. WORTH et al.

(Circuit Court of Appeals, Third Circuit. February 7, 1911.)

No. 1,400 (No. 215.)

BANKRUPTCY (§ 188*)—EQUITABLE ASSIGNMENT.

A legatee under certain wills assigned his interest to a finance company as security for his notes for $50,000. Certain French creditors having attached his interest in the estates, the finance company wrote their attorney, with the approval of the assignor, promising that, after payment of its debt and certain costs and expenses, it would pay their claims

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"from the money coming into our hands on account of" the assignor, and the attachment was thereupon released. The assignor was afterward adjudged bankrupt. *Held*, that the assignment to the finance company was not absolute, but was a mortgage only, which gave the company no right to receive any more of the fund than was necessary to pay its own claims, which was all it did in fact receive from the trustee in bankruptcy who sold the bankrupt's interest in the estates; that the company's promise therefore did not operate as an equitable assignment of any part of the fund, nor give the French creditors any preferred right to payment therefrom over other creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

In the matter of George A. Ballantine, bankrupt. From an order (179 Fed. 548) of the District Court giving preference to the claims of Worth and others, creditors, Charles A. Chase, trustee, appeals. Reversed.

Reynolds D. Brown, for appellant.
Samuel W. Cooper, for appellees.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

LANNING, Circuit Judge. The petition of the appellees for leave to reargue this case has been fully considered and our conclusion is that a reargument is unnecessary. We shall dispose of the case in this opinion, substituting it for our former one.

The contest is between the trustee of George A. Ballantine, bankrupt, and certain creditors residing in Paris, France. The question is whether those creditors who are the appellees are preferred over the general creditors. This question is to be solved by determining whether certain letters of February 1, 1907, should be construed as an equitable assignment by Ballantine in favor of the appellees. The District Court so declared, and accordingly reversed the referee's finding.

Ballantine had a large interest in the estates of his father and grandfather. George G. Frelinghuysen is the trustee of both estates. On December 30, 1902, Ballantine, by two assignments, one to the New York Finance Company and the other to the New York Finance Company as trustee, assigned his interest in these estates to secure the payment of two promissory notes given by him, one for $40,000 and the other for $10,000. Each of these assignments expressly declared that if Ballantine should pay the note in it described, or any note or notes given in renewal thereof, then the assignment should be null and void, and that the estates thereby created should cease and determine. Each of them was therefore an assignment by way of mortgage; and the maxim "once a mortgage always a mortgage" is applicable. Each of them was in equity but a security for a specific debt.

After the assignments had been delivered, Ballantine and the New York Finance Company instituted against other interested parties in the Circuit Court of the United States for the District of New Jersey

a suit for the construction of the will of Ballantine's father. The claim of the complainants was that Ballantine's interest in his father's estate entitled him to an immediate payment of the principal, or at least to a part thereof. In January, 1907, while that suit was pending, Ballantine's interest in the two estates was attached by the appellees. On February 1, 1907, pursuant to an understanding previously had between Alfred W. Varian, who was the attorney of the appellees, the New York Finance Company and Ballantine, the following letters were written:

"February 1st, 1907.

"Alfred W. Varian, Esq., 44 Pine Street, New York.

"Dear Sir: Confirming understanding between our Mr. Depue and you with reference to certain claims represented by you against George A. Ballantine, we beg to state that after the payment of amounts due by George A. Ballantine to New York Finance Company and to New York Finance Company as trustee and also the payment of any other actual liens which may exist upon said George A. Ballantine's interest in the estates of Peter Ballantine, deceased, and Peter H. Ballantine, deceased: and after the payment of actual disbursements, expenses and counsel fees in re suit brought for the construction of the wills of said decedents, we will pay to you as counsel for the claimants mentioned below and from the money coming into our hands for account of said George A. Ballantine, the full amount of said claims as follows:

"Worth, with interest from 1899, 8615 francs. La Ferriere, with interest from 1904, 14,598.50 francs. Guillot and Cie, with interest from 1905, 1117.35 francs.

"Yours Very Truly,             New York Finance Company,
                               "Arthur W. Depue, President.

"I have read the above letter and hereby authorize the New York Finance Company to carry out the provisions therein contained which I hereby approve.                                 George A. Ballantine,"

"New York, February 1, 1907.

"Alfred W. Varian, Esq., 44 Pine Street, New York.

"Dear Sir: Out of any funds coming through our hands applicable to the payment of the debts of George A. Ballantine, and apart from prior equities now existing, we will see that your clients are paid in accordance with the above authorization.

"Very Truly Yours,            New York Finance Company,
                               "Arthur W. Depue, President."

The attachment was thereupon withdrawn. Subsequently, on March 1, 1907, the Circuit Court decided against the contention of the complainants in the suit above mentioned, and on March 26, 1908, this court affirmed the Circuit Court (Ballantine v. Ballantine, 152 Fed. 775, and 160 Fed. 927). In March, 1909, Ballantine went into bankruptcy. Ballantine's life interest in his father's estate and his interest in his grandfather's estate were thereafter sold for the sum of $128,000, of which something over $25,000 is now in the hands of the trustee in bankruptcy, the residue having been paid to the New York Finance Company, in satisfaction of its notes for $40,000 and $10,000, and to other preferred creditors. It is upon the fund now in the hands of the trustee in bankruptcy that the appellees insist they have a preferred claim by way of equitable assignment.

It will be observed that the New York Finance Company's promise in its first letter to Mr. Varian, the attorney of the appellees, made while the equity suit was pending and evidently in the hope that it would be decided in favor of the complainants, was not an uncondi-

tional one. It was a promise to pay the amount of the claims of the appellees "from any money coming into our hands for account of said George A. Ballantine." Ballantine appended to the letter containing the promise an authorization to the New York Finance Company "to carry out the provisions therein contained." And to that authorization the New York Finance Company added a second letter to Mr. Varian saying that:

"Out of any funds coming through our hands applicable to the payment of the debts of George A. Ballantine, and apart from prior equities now existing, we will see that your clients are paid in accordance with the above authorization."

The trustee of the estates of Ballantine's father and grandfather was not a party to these transactions. Indeed, he seems to have known nothing of them until November 25, 1907, when Mr. Varian wrote him a letter advising him of the withdrawal of the attachment proceedings, requesting him not to pay anything to Ballantine or to the New York Finance Company until some adjustment should be made of the claims of the appellees, and, without giving definite information concerning the amounts of the claims, saying merely that "these claims are in behalf of Guillot & Co., Worth and La Ferriere, all of Paris, and aggregate upwards of $10,000." The fund was in the hands of the trustee of the Ballantine estates. The promise—a conditional one—was made by the New York Finance Company.

It is earnestly contended by the appellees' counsel that, as the entire interest of Ballantine in the two estates was assigned to the New York Finance Company, that company was entitled to collect from the trustee of the Ballantine estates the whole of that interest, and out of the sums received in excess of the amounts secured by the assignments to pay the sums mentioned in the letters of February 1, 1907. If Ballantine had executed a third assignment to the New York Finance Company as trustee for the appellees, similar in form to the other two assignments, the right of the appellees to payment out of the funds now in the possession of the trustee in bankruptcy would have been clear. But no such assignment was executed. What was done, in effect, was this: The New York Finance Company promised Mr. Varian, the attorney of the appellees, that if it should receive from the estates of Ballantine's ancestors more than enough to satisfy the debts due to it individually and as trustee, and to other lienors, if any, and the expenses of the suit then pending, it would out of the excess pay the claims of the appellees. To this conditional promise Ballantine gave his consent. The case has been argued on behalf of the appellees upon the theory that the entire interest of Ballantine in the estates of his father and grandfather was transferred by him to the New York Finance Company by the two assignments of December 30, 1902, in such manner that the letters of February 1, 1907, operated to appropriate a portion of the two estates to the payment of the claims of the appellees. But in this argument the fact is overlooked that in equity the two assignments were mere mortgages to secure specific debts. The interest of the finance company in those estates was measured and limited by the amount of its two notes. The

mortgages were but incidents to the debts. They could not be separated from the debts which they secured so as to have an independent existence. A transfer of them without a transfer of the notes which they secured would have been a nullity. When the two notes were paid, the finance company had no legal or equitable right to claim more. Such, we understand to be the rule in New Jersey, where the estates of Ballantine's ancestors were located, and in New York, where the letters of February 1, 1907, were delivered. Magic v. Reynolds, 51 N. J. Eq. 113, 26 Atl. 150; Merritt v. Bartholick, 36 N. Y. 44; Kortright v. Cady, 21 N. Y. 343, 78 Am. Dec. 145; Sexton v. Breese, 135 N. Y. 387, 32 N. E. 133. While equity disregards mere form and will construe as an equitable assignment any writing or series of writings which plainly appropriates a particular fund to be created in futuro, and will enforce such assignment after the fund comes into existence, if it never does come into existence, there is nothing to which the agreement or writing can attach or against which it can be enforced. And that is the difficulty here. The finance company by the letters of February 1, 1907, expressly declared that its payment of the claims of the appellees should depend upon a contingency. Its promise was to pay, subject to prior payments to itself and others, "from the money coming into our hands for account of George A. Ballantine." Ballantine agreed to that contingent promise, and to nothing more. The case differs therefore from the cases to which we have been referred in which appropriations out of expectancies which have subsequently come into existence have been upheld as equitable assignments. Here Ballantine had a vested life interest in the two estates over and above all that had been assigned by him to the finance company and others. He assigned no part of that remaining interest to the appellees. He simply authorized the finance company, if at any future time it should receive money on his account in excess of what he owed to it and certain other parties, to pay out of that excess the claims of the appellees.

The New York Finance Company never received any moneys for Ballantine's account in excess of the sums due to it. The letters of February 1, 1907, show no intention of vesting in the appellees an equitable property of any kind before the funds should reach the possession of the finance company. Whether if the funds had reached its possession the appellees would have had an equitable claim against those funds is a question not now before us. The fact is that the appellees withdrew their attachment because it was thought to embarrass, in some way, the litigation then pending over the construction of the will of Ballantine's father, and they accepted, in lieu of the attachment, the finance company's conditional promise above mentioned.

We are satisfied that the present case is not one of equitable assignment, and that the petition for leave to reargue the case should be denied. The decree of the District Court will therefore be reversed, and that of the referee disallowing the claims of the appellees as preferred claims will be affirmed. The appellant is entitled to costs.